S. Peter LAMBROS et ux., Appellants,

v.

The STANDARD FIRE INSURANCE
COMPANY, Appellee.

No. 15398.

Court of Civil Appeals of Texas,
San Antonio.

Nov. 5, 1975.

Rehearing Denied Dec. 3, 1975.

Levey & Goldstein, San Antonio, for appellants.

Joe Meador, San Antonio, for appellee.

CADENA, Justice.

Plaintiffs, S. Peter Lambros and wife, Sophia P. Lambros, appeal from a judgment rendered n. o. v., that they take nothing in their suit against defendant, The Standard Fire Insurance Company, to recover, under the so-called "all risks" homeowner's policy, for damage allegedly caused to plaintiffs' dwelling by underground water.

In their first amended original petition, plaintiffs alleged that their dwelling "suffered serious structural damage and structural slab collapse caused by movement of water below the ground surface exerting pressure on the foundation, floors, sidewalks, driveways, walls. . . ." In their first supplemental petition, plaintiffs, in answer to defendant's allegations that the loss suffered by plaintiff was not within the coverage afforded by the policy, but fell within certain exclusions set out by defendant in its pleading, alleged that the damage "was caused by and resulted from water below the surface of the ground, including that which exerted pressure on (or flowed, seeped or leaked through) sidewalks, . . foundations, walls, basements . . . or through doors, windows or any other openings in such . . . foundations, walls or floors." Plaintiffs conceded that such loss was excluded in the standard printed policy form, but that such exclusion, being exclusion d(3), was deleted in consideration of the payment by plaintiffs of an additional premium. They further alleged, in the alternative, that the loss was caused by and resulted from "settling, cracking, bulging, shrinkage, expansion of foundations, walls, floors, ceilings, roof structures, . . . ; and that said loss was not excluded under the terms of said policy since said loss was caused by a collapse of the building or a part thereof and said loss was otherwise covered under Plaintiffs' said policy." In its original printed form, the policy contained the following exclusion:

d. Loss caused by or resulting from:

(1) Flood, surface water, . . . ;

(2) water which backs up through sewers or drains;

(3) water below the surface of the ground including that which exerts pressure on (or flows, seeps or leaks through) . . . foundations, walls, basement or other floors, . . . or through . . openings in such . . . , foundations, walls or floors[.]

Attached to the policy is Form No. HO–353, which is captioned, "Loss caused by water which backs up through sewers and drains and subsurface water assumption endorsement." This endorsement reads: "In consideration of an included addition premium, Exclusions d(2) and d(3), in the form attached to this policy, under the caption 'Perils insured Against' are hereby eliminated. . . ."

Plaintiffs' policy, then, insured against "all risks of physical loss" except:

a. [not applicable here]

b. [not applicable here]

c. [not applicable here]

d. Loss caused by or resulting from:

(1) flood, surface water . . . ;

(2) [deleted]

(3) [deleted]

e. Loss caused by or resulting from freezing . . . ;

f. [not applicable]

g. Loss caused by earthquake, landslide or other earth movement;

h. [not applicable]

i. Loss caused by inherent vice, wear and tear, deterioration; rust, rot, mould or other fungi; dampness of atmosphere, . . . ;

j. [not applicable]

k. Loss . . . caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures . . . ;

The foregoing Exclusions a through k shall not apply to ensuing loss caused by fire, smoke or explosion and Exclusions i, j and k shall not apply to ensuing loss caused by collapse of building, or any part thereof, water damage . . . , provided such losses would otherwise be covered under this policy.

The jury answered the special issues as follows: (1) Plaintiffs' dwelling sustained a physical loss on or about July 1, 1972. (2) The loss was caused by, or resulted from, water below the surface of the ground,

including that which exerted pressure on sidewalks, drives, foundations, walls, sub-basements or other floors. (3) The loss was not caused by, nor did it result from, surface water. (4) The loss was not the result of, or caused by, earthquake, landslide or earth movement. (5) The loss was not caused by inherent vice. (6) The loss was caused by "settling, cracking, bulging, shrinkage or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences or retaining walls." (7) The loss "was caused by a collapse of the building or any part thereof or by water damage." (8) Defendant waived the requirement that plaintiffs file a proof of loss within 91 days after the loss. (9) The full and reasonable cost of repair of plaintiffs' dwelling, without deduction for depreciation, is $32,301.00.

After defendant filed its motion urging the court that the answers to issues 1, 2, 3, 4, 5, 7 and 9 be disregarded, the trial court entered judgment sustaining defendant's motion for judgment n. o. v. insofar as it relates to the answer to issue 7 and, after disregarding the answer to issue 7 on the ground that it was without support in the evidence, decreed that plaintiffs take nothing.

■ It is clear that the jury's finding, in responses to issue 6, that the loss was caused by settling, cracking, etc., brings the loss within exclusion k. Plaintiffs insist that this finding does not prevent recovery because, since the exclusion applicable to loss caused by underground water had been eliminated, and since the jury found that the loss was caused by underground water, exclusion k is inapplicable. As we understand this contention, the argument is simply that, since, as a result of the deletion of the underground water exclusion, the policy covers loss caused by underground water, all losses caused by underground water are covered and the exclusions which are still part of the policy are not applicable to such losses.

We are thus faced with the problem of determining the extent, if any, to which the deletion of a particular exclusion or exclusions, limits the applicability of remaining exclusions.[1]

Giving to the deletion of exclusion d(3) its full effect, and reading such effect into the coverage provisions in the manner most advantageous to plaintiff, we arrive at a policy which insures against "all risks of physical loss, including loss caused by underground or subsurface water, except . . k. loss caused by settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools." Even after this plaintiff-oriented rewriting, it is clear that loss caused by settling, etc. is not covered. The cause of the settling is irrelevant, unless exclusion k is also rewritten to limit it to settling, etc., not caused by underground water. We conclude that the deletion of the subsurface water exclusion did not eliminate exclusion k or limit it to settling not caused by underground water.

■ Plaintiffs next argue that, by the express terms of the paragraph following exclusion k, that exclusion is not applicable here, since exclusion k is made inapplicable to "ensuing loss and collapse of building, or any part thereof," or water damage, provided such loss would otherwise be covered under the policy.

Admittedly, the "ensuing loss" exception to exclusions i, j and k presents some difficulty. At the outset, there are two possible interpretations of the exception. The first interpretation would restrict the modifying phrase, "ensuing loss" to building collapse, as though the exception were, insofar as here relevant, written in the following form:

specific reference to the applicability of the "settling" exclusion where the underground water exclusion has been deleted.

1. This specific problem was foreseen in Gollaher, The 1960 Texas Standard Homeowners Policy, 24 Sw.L.J. 636, 657 (1970), with

. . . Exclusions i, j and k shall not apply to

(1) ensuing loss caused by collapse of building or any part thereof,

(2) water damage.

The second possible interpretation would construe the exception as though it were written in the following form:

. . . Exclusions i, j and k shall not apply to ensuing loss caused by

(1) collapse of building or any part hereof,

(2) water damage.

Despite the rule that insurance contracts are to be construed against the insurer and in favor of the insured, we believe that the second interpretation of the exception is the only reasonable construction. That is, the exception to exclusions i, j and k is applicable only to "ensuing loss" caused by collapse of the building, or any part thereof, and to "ensuing loss" caused by water damage. This is the construction adopted in *McKool v. Reliance Insurance Company,* 386 S.W.2d 344 (Tex.Civ.App.—Dallas 1965, writ dism'd). While there is no indication in the *McKool* opinion that any other interpretation was urged by the insured, the interpretation there adopted gives to the language of the exception, when the contract and, particularly, the coverage provisions are construed as a whole. To construe the exception as making exclusions i, j and k completely inapplicable to "water damage" rather than only to "ensuing loss caused by water damage" would effectively destroy all of exclusion d, which excludes most forms of water damage from the policy's coverage. This would clearly be the result if we consider the exclusionary provisions in their original form as they appeared in the original version of the printed policy. It can, of course, be argued that in the case before us, since exclusions d(2), relating to loss resulting from water which backs up in sewers and drains, and d(3) relating to loss resulting from the action of underground water, such a construction would amount to no more than a recognition of the effect of the deletion of such exclusions. Nevertheless, such a construction would effectively destroy exclusion d(1), relating to damage caused by surface water, unless we give to the same language two different meanings, making the exception applicable to all losses resulting from subsurface water and water backing up in sewers and drains, but restricting its applicability only to "ensuing loss" caused by surface water damage.

To "ensue" means "to follow as a consequence or in chronological succession; to result, as an ensuing conclusion or effect." Webster's New International Dictionary 852 (2d ed., unabridged, 1959). An "ensuing loss," then, is a loss which follows as a consequence of some preceding event or circumstance. *McKool,* 386 S.W.2d at 345. Assuming that plaintiffs' loss resulted from the action or presence of water beneath the surface, it nevertheless cannot be contended that such loss was an "ensuing loss" caused by water damage. Such a conclusion would involve "a backward application of the ensuing loss exception." Gollaher, *op. cit.,* 24 Sw.L.J. at 651. Such a construction, in effect, reads "ensuing" out of the exception. If we give to the language of the exception its ordinary meaning, we must conclude that an ensuing loss caused by water damage is a loss caused by water damage where the water damage itself is the result of a preceding cause. What is the preceding cause which gives to the exception the effect of taking the ensuing loss out of the reach of exception k? Again, the plain language of the exception compels the conclusion that the water damage must be a consequence, i. e., follow from or be the result of the types of damage enumerated in exception k. "Ensuing loss caused by water damage" refers to water damage which is the result, rather than the cause, of "settling, cracking, bulging, shrinkage, or expansion of foundations, walls, floors, ceilings. . . ." Since the evidence in this case, even when viewed in the light most favorable to plaintiffs, conclusively establishes that water damage was

the cause, rather than the consequence, of settling, etc., exclusion k is applicable. See *Park v. Hanover Ins. Co.,* 443 S.W.2d 940, 942 (Tex.Civ.App.—Amarillo 1969, no writ).

Plaintiffs next contend that they are entitled to recover under the portion of the exception which makes exclusion k inapplicable to "ensuing loss caused by collapse of building, or any part thereof."

Our Supreme Court, saying that the term "collapse" is unambiguous,[2] defined it as "to fall or shrink together, to cave in, to fall into a flattened, distorted or disorganized state." With reference to partial collapse, the Court said: "[A] partial collapse would certainly mean that the foundation or walls or other supporting structures had been impaired with respect to their function of supporting the superstructure. We think the term can be defined properly as a sinking, bulging, breaking or pulling away of the foundation or walls or other supports so as materially to impair their function and to render the house unfit for habitation." *Employers Mut. Cas. Co. of Des Moines, Iowa v. Nelson,* 361 S.W.2d 704, 708, 709 (Tex.1962).

In this case there is no evidence of falling in or loss of shape, no reduction to flattened form or rubble. There is, therefore, no evidence of a collapse of the building. With reference to a partial collapse, there is ample testimony to the effect that unless repairs are made to plaintiffs' home, a collapse "could" occur in the future. The evidence discloses cracks in the walls, doors "dragging out of line," separations on the terrazzo floor, imperfections in the terrace, and a pulling away of the stairs from the house. Some of the supporting piers have dropped, causing the house to settle some two to three inches in the front. There is evidence of the "shearing" of one stud column and the cracking of others. One of defendant's witnesses testified that if the "sheared" column had been "left alone and left unabated and continuing" the entire structure might have come down. This witness testified that there was a partial collapse of the structure, although he stated there had been no collapse of the foundation.

The witness who testified that there had been a partial collapse of the structure defined "collapse" as "failure of the structure" and added, "When you think of collapse, in engineering terms, you think of a structure that just falls completely down; and a partial collapse is where part of it falls down. In engineering terminology that's the way we use it, and that's the way I'm referring to it."

It is clear that this witness did not use the term "partial collapse" in the same sense as that term was used by our Supreme Court in *Nelson,* since the definition given by the witness would make it possible to find "partial collapse" even though the dwelling had not been rendered "unfit for habitation." It is clear that the Supreme Court considered the requirement that the dwelling be rendered unfit for habitation an important element of a partial collapse, since in the course of the *Nelson* opinion there is a clear disapproval of the decision in *Jenkins v. United States Fire Ins. Co.,* 185 Kan. 665, 347 P.2d 417 (1959), where the trial court's definition was held erroneous because it contained the requirement that the building be rendered unfit for use as a dwelling.

Plaintiffs fail to call our attention to any testimony to the effect that the dwelling in question was rendered unfit for habitation. The evidence relating to the nature of the damage to the structure does not even tend to indicate that the structure is no longer habitable. There is no evidence that the structure is unsafe or even unfit for use as a dwelling.

In view of the highly restrictive meaning which our Supreme Court has given to the

---

**2.** Cf. *Travelers Fire Ins. Co. v. Whaley,* 272 F.2d 288, 290–91 (10th Cir. 1959), treating "collapse" as an ambiguous term.

terms with which we are concerned, we must conclude that the trial court was correct in ruling that there is no evidence of a collapse or partial collapse of plaintiffs' home.

Since we have concluded that the judgment in favor of defendant must be affirmed, it is unnecessary to discuss defendant's 44 cross-points, since the questions raised by such cross-points would become relevant only if we concluded that the judgment in favor of defendant was erroneous.

The judgment of the trial court is affirmed.