**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 7, 2004**

**Charles R. Fulbruge III**
Clerk

In the United States Court of Appeals

For the Fifth Circuit

———————————————

No. 03-20778

———————————————

RICHARD FIESS AND STEPHANIE FIESS,

Plaintiffs - Appellants

versus

STATE FARM LLOYDS,

Defendant - Appellee

———————————————

Appeal from the United States District Court
For the Southern District of Texas

———————————————

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Plaintiffs Richard and Stephanie Fiess brought suit against their homeowner's insurance carrier, State Farm Lloyds (State Farm), seeking coverage for losses incurred as a result of mold contamination in their house. The district court granted summary judgment in favor of State Farm concluding that mold contamination was expressly excluded from coverage under the Fiesses' insurance policy, and was not covered under the policy's ensuing loss provision. In addition, the district court held that the Fiesses' claim failed under the doctrine of concurrent

-1-

causation because they failed to raise a fact issue regarding the amount of mold contamination resulting from water damage otherwise covered under the policy. We reverse the district court's ruling with respect to the doctrine of concurrent causation, finding that the Fiesses presented some evidence that would allow a finder of fact to segregate those losses potentially covered under the policy from those that are excluded. Furthermore, because relevant state authorities conflict regarding the application of the ensuing loss provision to the mold exclusion in Texas homeowner's insurance policies,[1] and because the resolution of this issue is significant to both the insurers and homeowners in Texas, we certify the coverage question to the Texas Supreme Court.

I

A

This case began in the aftermath of Tropical Storm Allison, which ravaged the Texas coastline in the summer of 2001. Located in the city of Deer Park in Harris County, the Fiesses' house sustained substantial flood damage. The Fiesses filed a claim under their flood insurance policy issued by State Farm Fire and Casualty Company, and secured an initial payment of $48,626.00

---

[1]The specific policy at issue in this appeal is the Homeowners Form B (HO-B) insurance policy as prescribed by the Texas Department of Insurance effective July 8, 1992 and revised January 1, 1996. Throughout this opinion, all references to "insurance" or "insurance policy" are references to the HO-B policy.

for repairs to their home and replacement of personal property damaged by the flood.

During the days following the flood, the Fiesses began remediation work on their home, sweeping out flood water and removing damaged carpet. Approximately one week after the storm had passed, the Fiesses began removing damaged sheetrock only to discover that their home was contaminated with a voluminous amount of black mold. Upon further inspection, black mold was found to be growing in the walls adjoining the dining room, kitchen, bedrooms, and hall bath. Troubled by this discovery, the Fiesses sent samples of the mold to NOVA Labs in Conroe, Texas. Paul Pearce, Ph.D. ("Dr. Pearce") tested the samples and determined that they contained hazardous stachybotrys mold which, in his opinion, made the house dangerous to inhabit. Upon subsequent inspection of the Fiess house, Dr. Pearce found other types of mold, including alternaria, chaetomium, cladosporium, aspergillus penicillium, and all of the naturally occurring environmental molds.

Dr. Pearce attributed the mold to six areas of water instrusion into the home: flood waters related to Allison, and pre-flood roof leaks, plumbing leaks, heating, air conditioning and ventilation (HVAC) leaks, exterior door leaks, and window leaks. At his deposition, Dr. Pearce stated that 25% of the mold present in the Fiess house at the time of his inspection was "non-Allison" related. Later, Dr. Pearce revised his estimate on

-3-

grounds that he had misunderstood the question. In his revised estimate, Dr. Pearce placed the percentage of non-Allison related mold in the Fiess house at 70%. He conceded, however, that the Allison-related damage had been extensive, leaving mold on virtually every wall, stud, board and baseplate of the first two to three feet of the house.

Following their discovery of the mold contamination, the Fiesses submitted a claim under their homeowner's insurance policy. Their insurance carrier, State Farm, conducted an inspection of the premises and paid the Fiesses $34,425.00 for non-covered mold remediation in those areas of the flood damaged house where there was evidence of small pre-flood water leaks. The payment was made pursuant to a reservation of rights in which State Farm maintained that it was not obligated under the policy to honor the claim.

B

Believing the award to be insufficient to fully compensate them for damage caused by mold attributable to pre-flood water leaks, the Fiesses filed suit against State Farm in the 127th Judicial District Court of Harris County, asserting claims for violations of the Texas Deceptive Trade Practices Act (DTPA), breach of contract, and fraud and intentional misrepresentation. Because their homeowner's policy explicitly excluded all damage caused by flooding, the Fiesses' claim encompassed only that mold caused by the presence of pre-flood water intrusions. State Farm

-4-

removed the case to federal court on the basis of diversity of citizenship.  The Fiesses then filed an amended complaint alleging claims for violations of the Texas Insurance Code and breach of warranty.

State Farm moved for summary judgment on all of the Fiesses' claims.  The district court granted the motion, pointing to section 1(f)(2) of the policy excluding coverage for "rust, rot, mold or other fungi";[2] the court also found that mold damage caused by any non-flood related "water damage" was not covered under the policy's ensuing loss provision, thus barring the Fiesses' mold claims.[3]  In reaching this second conclusion, the court relied upon cases holding that "ensuing loss" provisions do not "reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils."[4]  Finally, the court held that the Fiesses had failed to offer competent evidence that would allow a finder of fact to segregate potentially covered mold contamination from non-covered mold contamination; that even if the Fiesses established coverage for some of the mold contamination, State Farm was entitled to

---

[2]*Fiess v. State Farm Lloyds*, No. H-02-CV-1912, 2003 WL 21659408, at *6-7 (S.D. Tex. June 4, 2003).

[3]*Id*. at *9.

[4]*Id*. at *9.

summary judgment under the doctrine of concurrent causation.[5]

The Fiesses appeal this summary judgment, advancing three arguments on appeal. First, as the result of an exclusion repeal provision in their homeowner's policy, the mold exclusion does not apply to mold caused by water leaks from plumbing, heating or air conditioning systems or appliances. Second, they argue that the district court erred in rejecting the testimony of their expert witness, Dr. Pearce, as some evidence of the percentage of mold caused by non-flood sources, thereby precluding their mold claims under the doctrine of concurrent causation. Third, they contend that the district court erred in granting summary judgment because the ensuing loss provision provides coverage for mold contamination caused by otherwise covered water damage. We address these contentions in sections II, III and IV, respectively.

## II

In their first issue, the Fiesses argue that coverage should be extended to all mold contamination in their house caused by water intrusions resulting from plumbing and HVAC leaks. We find that, because the Fiesses failed to appeal the district court's ruling rejecting their contention, we lack jurisdiction to

---

[5]*Id*. at *10. The district court also granted summary judgment with respect to the Fiesses' claims that State Farm breached its duty of good faith and fair dealing, violated the Texas Insurance Code and Deceptive Trade Practices Act, and committed fraud and intentional misrepresentation. The Fiesses have chosen not to pursue these claims on appeal; therefore, we will not address them further.

address it.

The district court entered final judgment in favor of State Farm on all contested issues on June 3, 2003.  On June 13, the Fiesses timely filed a Rule 59(e) Motion which was denied by the court on July 1.  On July 3, they filed a reply brief in support of their Rule 59(e) Motion which the court treated as a Motion to Reconsider.  On July 30, the Fiesses filed a Notice of Appeal specifically referencing the June 3 final judgment and the July 1 denial of their Rule 59(e) Motion.  Finally, on August 4, the district court denied their Motion to Reconsider.

The Fiesses admit that they raised the issue of the plumbing leaks exception for the first time in their July 3 reply.  Citing to our case law allowing issues to be raised for the first time in post-judgment motions,[6] they contend that this issue was properly preserved for appeal.  This argument misses the mark.  While an issue initially raised in a post-judgment motion may be preserved for appeal, it cannot be considered by this court unless the judgment or order disposing of it is properly noticed for appeal.[7]

---

[6]*See Instone Travel Tech Marine & Offshore* v. *Int'l Shipping Partners*, 334 F.3d 423, 431 n.7 (5th Cir. 2003)(issue preserved for appeal when raised in Rule 59(e) Motion for Rehearing); *N.Y. Life Ins. Co. v . Brown*, 84 F.3d 137, 142 n.4 (5th Cir. 1996) (issue preserved for appeal when raised in Rule 60(b) Motion to Vacate); *First Nat. Bank of Commerce v. De Lamaze*, 7 F.3d 1227, 1229 n.9 (5th Cir. 1993) (issue preserved for appeal when raised in motion to set aside jury verdict).

[7]FED. R. APP. P. 3(c)(1)(B) ("The notice of appeal must . . . designate the judgment, order, or part thereof being appealed . . . .").

The Fiesses made no mention in their Notice of Appeal of the August 4 order denying their Motion to Reconsider for the simple reason that the order had not yet been issued.  Our court has consistently taken a forgiving approach when construing notices of appeal in order to avoid technical barriers to review.[8]  To this end, "we have held that an appeal from a final judgment sufficiently preserves all prior orders intertwined with the final judgment," even when those prior orders are not specifically delineated in the notice of appeal.[9]  This rule has served to advance our underlying policy of seeking to avoid miscarriages of justice where the "intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party."[10]

We can find no intent on the part of the Fiesses to incorporate into their appeal the district court's August 4 order for the simple reason that their appeal was filed *before* the order was issued.  Furthermore, they failed to file a new or amended notice of appeal incorporating the August 4 order after

---

[8]*N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 884 (5th Cir. 1998) ("While the requirements of Rule 3(c) are jurisdictional, and 'noncompliance is fatal to an appeal,' courts construe a notice of appeal liberally to avoid technical barriers to review.") (quoting *Smith v. Barry*, 502 U.S. 244, 248 (1992).

[9]*Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997).

[10]*C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. 1981)(per curiam).

it was issued.[11]  Accordingly, because there was no effective

appeal of the ruling upon the effect of the plumbing leaks

exception, we lack jurisdiction to consider it.[12]

III

In their second issue, the Fiesses argue that the district

court erred in holding that they offered no evidence that would

allow a finder of fact to segregate potentially covered losses

from non-covered losses.  Under Texas law, an insured bears the

burden of proving that a loss is covered under the terms of an

insurance policy.[13]  Once the insurer has established that an

exclusion applies, the insured has the burden of proving the

application of an exception to the exclusion.[14]  If covered and

non-covered perils combine to create a loss, the insured may only

recover the amount caused by the covered peril.  This principle

is commonly known as the "doctrine of concurrent causes."[15]

---

[11]*See Warfield v. Fid. & Deposit Co.*, 904 F.2d 322, 326 (5th Cir. 1990) (notice of appeal filed prior to the issuance of an order clearly did not intend to incorporate the order).

[12]*Id.* at 325 ("Where the appellant notices the appeal of a specified judgment only or a part thereof . . . this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.") (quoting *C.A. May Marine Supply Co.*, 649 F.2d at 1056).

[13]*See Guar. Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (applying Texas law); *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App.–Forth Worth 2003, pet. denied).

[14]*Guar. Nat. Ins. Co.*, 143 F.3d at 193; *Venture Encoding Serv., Inc.*, 107 S.W.3d at 733.

[15]*Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 302-3 (Tex. App.–San Antonio 1999, pet. denied) (citing *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971)).

Because the insured may only recover for damage caused by covered perils, the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses.[16]

It follows that even if mold contamination caused by non-flood related water intrusions is a covered loss under the terms of the policy, summary judgment is still appropriate in this case unless the Fiesses raised a genuine fact issue with respect to the amount of mold contamination attributable to such water intrusions.[17] We review the district court's grant of summary judgment *de novo*,[18] and will affirm if, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists with respect to the amount of covered and non-covered loss.[19] A material fact is one that might affect the outcome of the suit under the applicable law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could

---

[16]*Id.* at 303 (citing *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993)).

[17]We will take up the issue of whether coverage exists under the policy for mold contamination caused by non-flood related water damage in Part IV, *infra*.

[18]*Instone Travel Tech Marine & Offshore*, 334 F.3d at 427.

[19]*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (in determining if there is a genuine fact issue, a court must review all evidence in the light most favorable to the nonmoving party, and must not weigh evidence or make a determination of credibility of witnesses).

return a verdict for the nonmoving party.[20]

At the summary judgment hearing before the district court, the Fiesses introduced expert testimony from Dr. Pearce that 70% of the mold in their house was attributable to water events other than the flood waters generated by Tropical Storm Allison. The district court found that this testimony provided no "reasonable basis for distinguishing mold caused by the flood from mold caused by non-flood events."[21] The court pointed specifically to Dr. Pearce's "concession" that mold caused by the flood covered every wall, stud, baseboard, and baseplate throughout the residence as reason to dismiss his testimony as insufficient to allow reasonable distinctions to be drawn between flood-induced mold and mold pre-existing the flood.[22]

We find the district court's reasoning unpersuasive. While it is true that Dr. Pearce testified that Allison caused two to three feet of flood water to invade the Fiess house, he also testified to evidence of non-Allison related water intrusions. In particular, he testified to evidence of water running down studs from consistent water leaks in the roof, and evidence of water leaks from windows. This is evidence that the house had experienced water damage prior to Tropical Storm Allison's

[20]*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986); *Anderson*, 477 U.S. at 248; *Instone Travel Tech Marine & Offshore*, 334 F.3d at 427.

[21]*Fiess*, 2003 WL 21659408, at *10.

[22]*Id.*

-11-

arrival.

Furthermore, Dr. Pearce testified to long-standing water damage resulting in significant mold growth due to portions of the house being wet for a long period of time.  For instance, Dr. Pearce testified that one particular wall cavity in the house contained a much more significant amount of mold growth than any other wall cavity, and that the additional growth was attributable to routine water intrusions.  In addition, he testified to water damage in the ceiling of the house that could not have been caused by the flood waters generated by Allison, and mold contamination that reached up to four feet above the floor, well above the alleged two to three foot height of the floodwaters.  Based on this and other evidence observed by Dr. Pearce, he testified that 70% of the mold growing in the house was attributable to non-Allison water intrusions.

Viewing this evidence in the light most favorable to the Fiesses, we find that they successfully raised a genuine issue of material fact regarding the amount of mold in their home not attributable to Allison-induced flood waters.  In reaching this conclusion, we are not unmindful of the requirement that summary judgment evidence rise to a level exceeding mere speculation.[23] While the Fiesses have not presented overwhelming evidence that

---

[23]*See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003)("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.") (citations omitted).

would allow a jury to flawlessly segregate covered mold contamination from non-covered mold contamination, the evidence they have presented constitutes a reasonable basis upon which a jury could reasonably allocate damages.  A jury could deduce that the excess mold damage in walls affected by continuous water intrusions is attributable to a covered loss.  In addition, the jury could conclude that the mold contamination located above the maximum height reached by the flood waters is attributable to a covered loss.  This is all that the doctrine of concurrent causation requires.[24]  Therefore, we find that, based on the evidence adduced by the Fiesses at trial, a reasonable jury could return a verdict in their favor.

IV

We now turn to the Fiesses' argument that their mold claims are covered under the ensuing loss provision contained in their homeowner's insurance policy.[25]  This claim implicates a question

_____

[24]Texas courts have never required a plaintiff to establish the amount of covered loss with absolute mathematical precision.  *See State Farm Fire & Cas. Co.*, 88 S.W.3d at 321.  Rather, the only requirement that has been propounded with any regularity is that of setting forth some *reasonable basis* for allocating damage between covered and non-covered events.  *See, e.g.*, *Wallis*, 2 S.W.3d at 304 ("[T]here must be some reasonable basis upon which the jury's finding rests."); *Lyons*, 866 S.W.2d at 601 ("When covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage.") (citing *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965)).

[25]The ensuing loss provision contained in the Fiesses' policy is a standard provision contained in a significant number of current HO-B policies.  The provision at issue is located in the portion of the policy marked "Section I-Exclusions."  Exclusion 1(f) states in pertinent part: "We do not cover loss caused by: . . . rust, rot, mold or other fungi . . . . We do cover *ensuing loss* caused by collapse of building or any part of the building, water damage . . . if the loss would otherwise be covered under this policy." (emphasis added).

-13-

of state law important to both Texas homeowners and insurers.  We are persuaded that the question is best answered by the court with jurisdiction to find state law.  We will therefore certify this question to the Supreme Court of Texas.

The Supreme Court of Texas is empowered to answer "questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent."[26]  We have disposed of all other issues on appeal, leaving only the question of whether the Fiesses' non-flood related mold contamination claim is covered under the ensuing loss provision of the policy.  If there is coverage, we must reverse the district court's grant of summary judgment and remand this case for trial.  If there is no coverage, however, the district court's ruling must be affirmed.  The Texas Supreme Court's decision on this question will therefore determine the outcome of this appeal.

We can identify no binding Texas Supreme Court case law addressing the question of whether the ensuing loss provision at issue in this case provides coverage for mold contamination resulting from otherwise covered water damage.[27]  The cases that

---

[26]TEX. R. APP. P. 58.1.

[27]We are urged by State Farm and its amici to accept *Lambros v. Standard Fire Insurance Co.* as binding authority on this issue based on its "writ refused" desigation.  *See Lambros v. Standard Fire Ins. Co.*, 530 S.W.2d 138 (Tex. App.–San Antonio 1975, writ ref'd).  We recognize that cases decided by Texas intermediate

-14-

have addressed the issue of the proper interpretation of the ensuing loss provision can be grouped into two categories: those that would extend coverage for mold resulting or ensuing from covered water damage,[28] and those that would not.[29]

_____

appellate courts designated "writ refused" carry the precedential value of a Supreme Court decision. TEX. R. APP. PROC. 56.1(c); *see also Baker v. Mallios*, 971 S.W.2d 581, 583 (Tex. App.–Dallas 1998) *aff'd by* 11 S.W.3d 157 (Tex. 2000) (designation of "writ refused" assigns a case the same precedential value as an opinion of the Texas Supreme Court). However, we decline to render judgment based solely upon *Lambros* for several reasons. First, *Lambros* was decided nearly 30 years ago. Second, the court in *Lambros* interpreted a homeowner's policy that has since undergone numerous changes. Finally, a number of state and federal courts, as well as the Texas Department of Insurance, have interpreted the ensuing loss provision at issue in this case in a manner inconsistent with *Lambros*.

[28]*See Flores v. Allstate Tex. Lloyd's Co.*, 278 F.Supp.2d 810, 814 n.3 (S.D. Tex. 2003)("[T]his court construes the mold exclusion as precluding coverage for mold occurring naturally or resulting from a non-covered event, but not for mold 'ensuing' from a covered water damage event."); *Salinas v. Allstate Tex. Lloyd's Co.*, 278 F.Supp.2d 820, 824 (S.D. Tex. 2003)(finding that the HO-B policy covers "mold claims to the extent that the claimed mold damage ensues from an otherwise covered water damage event"); *Home Ins. Co. v. Dennis*, No. 05-97-1479-CV, Feb. 10, 2000 WL 144115 (Tex. App.–Dallas 2000)(not designated for publication)(holding that mold contamination resulting or ensuing from otherwise covered water damage is not excluded from coverage by virtue of the ensuing loss provision); *see also Aetna Cas. & Sur. Co. v. Yates*, 344 F.2d 939, 941 (5th Cir. 1965)("A likely case for the application of the [ensuing loss] clause would be if water . . . coming from a burst pipe flooded the house and in turn caused rust or rot; loss from rust or rot so caused would be a loss ensuing on water damage."); *Allstate Ins. Co. v. Smith*, 450 S.W.2d 957 (Tex.Civ.App.–Waco 1970, no writ)(construing the ensuing loss provision as providing coverage for wood rot, an excluded loss, that was caused by otherwise covered water damage); *Employers Cas. Co. v. Holm*, 393 S.W.2d 363 (Tex.Civ.App.–Houston 1965, no writ)(same).

[29]*See, e.g., Fiess*, 2003 WL 21659408, at *7 ("For coverage to be restored via the ensuing loss clause, an otherwise covered loss must result or ensue from the excluded loss."); *Harrison v. U.S.A.A. Ins. Co.*, No. 03-00-362-CV, 2001 WL 391539, at *2 (Tex. App.–Austin April 19, 2001)("To qualify for the exception [under the ensuing loss clause], ensuing loss must follow from one of the types of damage enumerated in exclusion (f). In other words, the ensuing loss provision covers water damage that results from, rather than causes, rotting.") (citations omitted); *Daniell v. Fire Ins. Exch.*, No. 04-94-824-CV, 1995 WL 612405, at *2 (Tex. App.–San Antonio Oct. 18, 1995)(not designated for publication)("[W]hile an ensuing loss provision will cover water damage caused by an excluded event, it will not cover the excluded event even if it is caused by water damage."); *Lambros*, 530 S.W.2d at 141 (holding that "an ensuing loss caused by water damage is a loss caused by water damage where the water damage

-15-

Cases that would extend coverage for mold contamination "ensuing" from covered water damage interpret the ensuing loss provision as an exception to the exclusion for "rust, rot, mold or other fungi." Under this interpretation, mold contamination that results or ensues from a covered water damage event (*i.e.* a bursting pipe releasing water into a house) is covered under the policy notwithstanding the exclusionary language specifically denying coverage for mold. However, if mold contamination results from a water event that is not covered under the policy (*i.e.* naturally occurring water condensation accumulating in an inadequately vented crawl space under a house), coverage must be denied under the general mold exclusion. In this sense, the characterization of the ensuing loss provision as an "exception" to the mold exclusion is accurate and appropriate.

Cases that would deny coverage for mold contamination caused by a covered water event interpret the ensuing loss provision not as an exception to the mold exclusion, but rather as a type of "savings clause" intended to safeguard otherwise covered losses from an overly expansive construction of the policy exclusions. These cases read the "ensuing loss" provision as requiring, in essence, a preceding cause, a proximate cause, and an ensuing loss. The preceding cause must be one of the types of damage

---

itself is the result of a preceding cause" that is excluded from coverage under the policy); *see also Zeidan v. State Farm Fire & Cas. Co.*, 960 S.W.2d 663, 666 (Tex. App.-El Paso 1997, no writ)(interpreting an ensuing loss provision in conformity with *Lambros*).

enumerated in exclusion 1(f), including, *inter alia*, "rust, rot, mold or other fungi." The proximate cause, in turn, must be one of the forms of damage listed in the ensuing loss provision, including, *inter alia*, otherwise covered water damage. Finally, a loss must occur as a result of the *proximate cause*.[30]

These two interpretations of the ensuing loss provision are irreconcilable. We could make an *Erie*-guess as to how the Texas Supreme Court would resolve this conflict. We think the better approach, given the significance of the issue, is to certify the question to the only court that can settle this uncertainty with finality.

V

We REVERSE the judgment of the district court in part, finding that the Fiesses presented sufficient evidence to raise a fact issue regarding the amount of damage caused by non-flood related water damage. We CERTIFY one question to the Supreme Court of Texas.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE

---

[30]An example of the practical application of this "preceding cause–proximate cause–ensuing loss" formulation is as follows: Rust, an excluded form of damage, causes a pipe to burst. The damage to the pipe is clearly excluded under the policy exclusion for rust. However, any damage resulting or ensuing from the water that escapes as a result of the rust will be covered under the ensuing loss provision. Plugging these facts into the formulation results in the following: the rust eating through the pipe constitutes the preceding cause; the water escaping from the pipe constitutes the proximate cause; and the damage caused by the escaping water constitutes the ensuing loss.

FIFTH CIRCUIT TO THE SUPREME COURT, PURSUANT TO THE TEXAS CONSTITUTION ART. 5, § 3-C AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE TO THE SUPREME COURT OF TEXAS AND HONORABLE JUSTICES THEREOF:

## I. STYLE OF THE CASE

The style of the case in which certification is made is *Richard Fiess and Stephanie Fiess, Plaintiffs-Appellants v. State Farm Lloyds, Defendant-Appellee*, Case No. 03-20778, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Southern District of Texas, Houston Division. Federal jurisdiction is based on diversity of citizenship.

## II. STATEMENT OF THE CASE

In the summer of 2001, Tropical Storm Allison washed ashore in the Houston area forcing flood waters into the home of Richard and Stephanie Fiess. One week after the flood, the Fiesses removed sheetrock from their house and discovered large amounts of black mold growing in the walls. They promptly filed a claim for mold contamination with State Farm, their homeowner's insurance carrier. State Farm sent the Fiesses a reservation of rights notifying them that the contamination may not be covered under the terms of their policy. Ultimately, State Farm paid $34,425.00 on the claim, reserving its contention that the claim was not covered under the policy. The Fiesses filed suit

claiming that State Farm failed to compensate them for all damage caused by mold attributable to pre-existing water leaks.

State Farm filed a motion for summary judgment, arguing that the Fiesses' claims failed to come within the coverage terms of the policy. The district court granted State Farm's motion, finding that the ensuing loss provision of the Fiesses' homeowner's insurance policy did not cover mold contamination caused by water damage that was otherwise covered under the policy. The Fiesses have appealed this ruling.

### III. QUESTION CERTIFIED

Does the ensuing loss provision contained in Section I-Exclusions, part 1(f) of the Homeowners Form B (HO-B) insurance policy as prescribed by the Texas Department of Insurance effective July 8, 1992 (Revised January 1, 1996), when read in conjunction with the remainder of the policy, provide coverage for mold contamination caused by water damage that is otherwise covered under the policy?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified. The answer provided by the Supreme Court of Texas will determine this issue on appeal in this case. The record of this case, together with copies of the parties' briefs, is transmitted herewith.