IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-1104
════════════
 
Richard Fiess and Stephanie 
Fiess, Appellants,
 
v.
 
State Farm Lloyds, 
Appellee
 
════════════════════════════════════════════════════
On Certified Question from the United 
States
Court of Appeals for the Fifth 
Circuit
════════════════════════════════════════════════════
 
 
Argued March 30, 
2005
 
 
 
Justice Medina, joined by Justice O’Neill, dissenting.
 
This case 
comes to us on a certified question from the United States Court of Appeals for 
the Fifth Circuit asking us to determine under what circumstances, if any, the 
“ensuing-loss” provision of the Homeowners Form B (HO-B) insurance policy[1] provides coverage for mold 
contamination. In answering that question, the Court concludes that mold can 
never be an ensuing loss within the meaning of that provision. The Court reasons 
that the ensuing-loss provision is not an exception to the excluded perils it 
modifies but rather an assurance that covered losses remain covered even when 
they ensue from an excluded peril. Because I believe that the ensuing-loss 
clause may also be read as an exception to the excluded perils it modifies, it 
is susceptible to more than one reasonable interpretation and is therefore 
ambiguous. As the Court acknowledges, such ambiguities must be construed in 
favor of the insured. Applying that rule of construction here requires that we 
answer yes to the question certified to us by the Fifth Circuit Court of 
Appeals. Because the Court does not, I respectfully dissent.
I
In 2001, the 
home of Richard and Stephanie Fiess sustained substantial flood damage from 
Tropical Storm Allison. When the Fiesses began removing drywall damaged by the 
flood, they discovered black mold growing throughout the house. The Fiesses sent 
samples of the mold to a laboratory for analysis. The examiner concluded that 
the samples contained hazardous stachybotrys mold, which, in his opinion, made 
the house dangerous to inhabit. Upon subsequent examination of the Feiss house, 
the examiner concluded that the flooding had caused some of the mold 
contamination, but a significant percentage of the mold had been caused by roof 
leaks, plumbing leaks, heating, air conditioning and ventilation leaks, exterior 
door leaks, and window leaks before the flood. 
The Fiesses 
submitted a claim for mold damage under their homeowner’s insurance policy, 
which explicitly excluded all damage caused by flooding. Their insurance 
carrier, State Farm Lloyds (“State Farm”), inspected the home and, under a 
reservation of rights, paid the Fiesses $34,425.00 for mold remediation in those 
areas of the home where evidence of small pre-flood water leaks existed. Under 
its reservation of rights, State Farm maintained that it was not obligated to 
pay for mold damage. 
Believing 
State Farm’s payment to be inadequate to remediate the mold damage not caused by 
the flood, the Fiesses filed suit in state court. State Farm thereafter removed 
the case to federal court, where it obtained a summary judgment. The federal 
district court concluded that the policy specifically excluded mold 
contamination from coverage and that the ensuing-loss provision had no effect 
upon this exclusion. The Fiesses appealed, arguing[2] that coverage for the mold at issue 
was extended under the policy’s ensuing-loss clause. Concluding that the meaning 
of this clause was an unresolved question of state law important to both Texas 
homeowners and insurers and appropriate for decision by this Court, the Fifth 
Circuit certified the question to us. 
II
We have 
previously considered the meaning of the “ensuing-loss” provision in an earlier 
version of the HO-B policy, but not in connection with mold damage. In 
Lambros v. Standard Fire Insurance Co., a home sustained 
structural damage when pressure from subsurface water caused the foundation to 
shift. 530 S.W.2d 138 (Tex. Civ. App.–San Antonio 1975, writ ref’d). Exclusion k 
of the homeowner’s insurance policy excluded loss caused by foundation movement, 
but the policy’s “ensuing-loss” provision stated that “Exclusions i, j, and k . 
. . shall not apply to ensuing loss caused by . . . water damage . . . provided 
such losses would otherwise be covered under this policy.” Id. at 139. 
The homeowners argued that the damage to their foundation should be covered 
because the policy’s ensuing-loss provision provided for recovery for losses 
caused by water damage. The court of appeals disagreed, holding that “‘ensuing 
loss caused by water damage’ refers to water damage which is the result, rather 
than the cause,” of the excluded event; i.e., foundation movement. Id. at 
141. The court explained that “[t]o ‘ensue’ means ‘to follow as a consequence or 
in chronological succession; to result, as an ensuing conclusion or effect.’“ 
Id. (quoting Webster’s New International Dictionary 852 (2d ed, 
unabridged, 1959). Thus, “an ensuing loss caused by water damage is a loss 
caused by water damage where the water damage itself is the result of a 
preceding cause,” the preceding cause being one of the named, excluded perils. 
Id. This interpretation suggests a three-step causal formula, requiring: 
(1) a preceding cause (one of the excluded perils) leading to, (2) a proximate 
cause (building collapse, water damage, or glass breakage) resulting in, (3) an 
ensuing loss. We likewise accepted this three-step analysis by refusing the writ 
in the case. See State ex rel. McWilliams v. Town of Oak Point, 579 
S.W.2d 460, 462-63 (Tex. 1979) (notation “refused” indicates this Court’s 
adoption of the court of appeals’ judgment and opinion).
Lambros, 
however, only dealt with the first element of its three-step formula. Because 
the water damage was not caused by an excluded peril (the shifting foundation), 
the court held it was not covered under the ensuing-loss provision. Conversely, 
had the water damage been caused by an excluded peril, there might have been 
coverage if such loss would otherwise have been covered under the policy. See 
Lambros, 530 S.W.2d at 141.[3] But because there was no evidence of 
the requisite preceding cause, Lambros did not consider the balance of 
the provision; i.e., the types of damage an ensuing loss might include.
This Court 
has not mentioned Lambros since our refusal of the writ in that case more 
than thirty years ago. But the Court today again accepts its analysis of the 
ensuing-loss provision as correct, and I agree with this. ___ S.W.3d at ___. 
Moreover, although Lambros construed an earlier version of the HO-B 
policy, the ensuing-loss provision here is nearly identical to the former clause 
and should be construed similarly. But Lambros addresses only part of the 
ensuing-loss clause and therefore does not provide a complete answer to our 
present question. Having determined that the loss did not ensue from an excluded 
peril, Lambros did not consider the balance of the provision or purport 
to explain the meaning of a loss “otherwise . . . covered under this policy.” To 
correctly define this type of loss, we must begin with the text of the 
ensuing-loss provision and the relevant exclusion to which it applies.
III 
Section 
I-Exclusions, part 1.f. of the HO-B insurance policy provides:
 
f. We do 
not cover loss caused by:
(1)        
wear and tear, deterioration or loss caused by any quality in property that 
causes it to damage or destroy itself.
 
(2)        
rust, rot, mold or other fungi.
 
(3) 
       dampness of atmosphere, extremes of 
temperature. 
 
(4)        
contamination.
 
(5)        
rats, mice, termites, moths or other insects.
 
We do 
cover ensuing loss caused by collapse of building or any part of the 
building, water damage or breakage of glass which is part of the building 
if the loss would otherwise be covered under this policy. 
 
 
(emphasis added).
 
The Fiesses 
argue that the ensuing-loss provision is an exception to the mold exclusion 
designed to apply to any loss caused by covered water damage. According to the 
Fiesses, this provision restores coverage for mold caused by water damage, as 
long as the water damage itself is not excluded by one of the other provisions 
in the policy. State Farm, on the other hand, argues that the ensuing-loss 
provision merely reaffirms coverage when one of the listed excluded losses 
causes a secondary loss that would “otherwise be covered under this policy.” 
Because loss caused by mold is expressly excluded, however, State Farm concludes 
that it cannot be considered “otherwise [] covered under this policy.” Thus, 
State Farm interprets “otherwise covered” under the policy to negate the 
ensuing-loss clause by reinstating the exclusion to which it applies.
William J. 
Chriss, as amicus curiae, argues that neither party has it right. Amicus submits 
that the Feisses interpret water damage from the ensuing-loss provision too 
broadly, essentially ignoring Lambros and reading “ensuing” out of the 
provision. The amicus further argues that State Farm’s circular interpretation 
of the provision ignores the meaning of the word “otherwise,” thus depriving the 
provision of virtually any meaning. Amicus submits that the correct and more 
reasonable construction of “otherwise be covered” is that it refers to the 
remainder of the policy other than the paragraph under consideration. Thus, 
according to the amicus, water damage including mold, which results from an 
excluded peril as Lambros requires, would be covered because such loss is 
not excluded anywhere else in the policy other than in paragraph f.
The Texas 
Department of Insurance, the author of the homeowner’s policy at issue and the 
regulatory authority charged with ensuring compliance with state law in this 
area, also has filed an amicus brief that similarly disputes the Court’s present 
policy construction. Even though mold itself is initially listed as an 
exclusion, the Department submits that it is nevertheless brought back into 
coverage by the ensuing-loss language of paragraph 1.f., which provides an 
exception to the exclusion for mold or other fungi if the mold loss ensues from 
a covered peril. The Department further rejects the Court’s construction as 
rendering the ensuing-loss provision superfluous and concludes that the 
“provision can only be read to mean that despite any exclusion language, it 
includes coverage for certain previously excluded damage which is caused by a 
covered water loss.”
Although I do 
not view this language to be as clear and unambiguous as the agency responsible 
for its inclusion in the policy, I do accept the Department’s interpretation as 
an alternative reasonable construction. When the language of an insurance policy 
is capable of more than one reasonable interpretation, it is ambiguous, and when 
the ambiguity concerns an exclusionary provision, any uncertainty as to its 
meaning must be resolved in favor of the insured. Nat’l Union Fire Ins. Co. 
v. Hudson Energy Co., Inc., 811 S.W.2d 552, 555 (Tex. 1991). Moreover, when 
language in a contract is capable of more than one reasonable interpretation, 
evidence extrinsic to the contract may be used to determine its intended 
meaning. Nat’l Union Fire Ins. Co. v CBI Indus., Inc., 907 S.W.2d 
517, 520-21 (Tex. 1995). Relevant Texas case law, as well as the history of the 
ensuing-loss provision itself, support the view of the amicus that “otherwise . 
. . covered” refers to parts of the policy other than the paragraph connected to 
the ensuing-loss provision.
Employers 
Casualty Co. v. Holm, 393 S.W.2d 363 (Tex. Civ. App.– Houston 1965, no 
writ), was the first Texas case to apply the provision in this manner. There, 
the excluded peril of inherent-vice was the preceding cause of water damage to a 
home. A shower in the home was built without a shower pan (an inherent vice) and 
the ensuing leak caused the wooden flooring to rot and deteriorate. After 
holding that the negligence of the contractor did not destroy the accidental 
nature of the loss, the court examined the inherent-vice exclusion and concluded 
that water damage ensuing from the excluded cause was covered under the 
ensuing-loss exception because it was not excluded elsewhere in the policy. The 
court held that any loss caused by water damage ensuing from an excluded cause 
is covered under the policy if: 1) the excluded cause has an ensuing-loss 
exception, and 2) such water damage is not of a type otherwise excluded under a 
separately enumerated exclusionary paragraph, such as damage from surface water 
or naturally occurring ground water; i.e., another exclusion in the policy at 
issue. Holm thus held that “otherwise covered” meant caused by a type of 
water damage not excluded by other exclusions containing no ensuing-loss 
provisions. See also Allstate Ins. Co. v. Smith, 450 S.W.2d 957 (Tex. 
Civ. App.–Waco 1970, no writ) (following Holm).
Similarly, in 
Park v. Hanover Ins. Co., 443 S.W.2d 940, 942 (Tex. Civ. App.– Amarillo 
1969, no writ), the court stated that an ensuing loss is covered if it results 
from water damage and is not otherwise excluded under a different exclusionary 
paragraph. The court, however, found no coverage because the exclusion at issue 
did not contain an ensuing-loss provision.
Other courts 
have taken a more expansive view of the ensuing-loss provision, suggesting that 
it means nothing more than that the occurrence happened during the policy 
period, the insured complied with all conditions precedent and the like, and 
that all ensuing damage should therefore be covered. See, e.g., Burditt, 
86 F.3d at 477 (ensuing-loss provision extends coverage to all loss ensuing from 
an excluded peril); Merrimack Mut. Fire Ins. Co. v. McCaffrey, 486 
S.W.2d 616, 620 (Tex. Civ. App.-Dallas 1971, writ ref’d n.r.e.) (mold caused by 
water damage ensuing from an excluded peril is covered if the excluded initial 
cause has an ensuing-loss provision); McKool, 386 S.W.2d at 345-46 
(“[A]lthough losses caused by extremes of temperature or cracking are not 
covered by the policy, all ensuing losses . . . caused by water damages 
are covered.”) (emphasis added). The history of the ensuing-loss provision, 
however, indicates that Holm’s more restrictive application of the 
provision is the correct one.
Before 1990, 
the HO-B policy included one ensuing-loss provision placed at the end of the 
policy section listing eleven exclusions, a - k. Exclusion i in this list 
excepted from coverage:
 
i. Loss 
caused by inherent vice, wear and tear, deterioration; rust, rot, mould or other 
fungi; dampness of atmosphere, . . .;
 
j. * * *
k. * * *
The 
foregoing Exclusions a through k shall not apply to ensuing loss caused by 
fire, smoke or explosion and Exclusions i, j and k [exclusions f, g, and h in 
the Fiesses’ policy] shall not apply to ensuing loss caused by collapse of 
building, or any part thereof, water damage . . ., provided such losses would 
otherwise be covered under this policy. 
 
 
See 
Lambros, 530 S.W.2d at 139 (emphasis added). In 1990, several exclusions 
were moved to different paragraphs, and the letters identifying them were 
changed accordingly. Paragraph i (which had excluded losses caused by rust, rot, 
mold and several other causes) became paragraph f, paragraph j (which had 
excluded losses cause by animals owned by the insured) became paragraph g, and 
paragraph k (which had excluded losses caused by settling foundation) became 
paragraph h. The ensuing-loss provision was attached to each of the renumbered 
paragraphs. These revisions were not intended to restrict or change the scope of 
coverage[4] but merely to simplify the policy, 
making it easier to read. Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d 
738, 741-42 (Tex. 1998).
Although 
simplification was the intended purpose, the 1990 revisions have perhaps had the 
opposite effect. Before 1990, it seemed apparent that the “otherwise covered 
under this policy” language of the ensuing-loss provision referred to provisions 
of the policy other than those it identified as applicable. Thus the pre-1990 
policy expressly stated that the ensuing-loss provision superceded exclusions i, 
j and k (now exclusions f, g and h). The remaining exclusions to which it did 
not apply were not superceded; i.e., now exclusions a (loss to electrical 
devices), b (industrial smoke), c (contents windstorm losses), d (theft), e 
(mechanical breakdown), i (flood and surface water), j (freeze), and k 
(landslide or earthquake). In other words, if a peril excluded by paragraphs f 
(wear and tear, inherent vice, deterioration, rust, rot, mold, dampness, 
contamination), g (animals kept by the insured), or h (foundation movement) 
causes water damage, then the water damage ensuing from the excluded peril is 
covered “if the loss would be otherwise covered under this policy” (i.e., if the 
loss is not excluded in some other way by some other exclusions other than f, g 
and h). Because no change in coverage was intended by the 1990 revisions, that 
same analysis should hold true today. Balandran, 972 S.W.2d at 
741-42.
III
In 
conclusion, I would answer the question posed by the Fifth Circuit Court of 
Appeals, yes, because the ensuing-loss clause may reasonably be read as an 
exception to the mold exclusion. The Fifth Circuit offered the following 
practical application of the provision which I think is correct as I have 
modified it below:
 
An example 
of the practical application of this "preceding cause-proximate cause-ensuing 
loss" formulation is as follows: Rust, an excluded form of damage, causes a pipe 
to burst. The damage to the pipe is clearly excluded under the policy exclusion 
for rust. However, any damage resulting or ensuing from the water that escapes 
as a result of the rust will be covered under the ensuing-loss provision [so 
long as the loss is not excluded by some other provision of the policy other 
than an exclusion with an ensuing-loss provision; i.e., paragraphs f, g, and h]. 
Plugging these facts into the formulation results in the following: the rust 
eating through the pipe constitutes the preceding cause; the water escaping from 
the pipe constitutes the proximate cause; and the damage caused by the escaping 
water constitutes the ensuing loss.
 
 
392 F.3d at 
810 n. 30 (as modified). In other words, the Texas Standard HO-B policy provides 
coverage for losses, including mold, caused by water damage ensuing from any of 
the perils listed in paragraphs 1.f, 1.g, or 1.h, so long as such damage is not 
excluded by some other provision of the policy besides these three paragraphs. 
Because the Court concludes that this is not a reasonable alternative 
interpretation of the ensuing-loss provision and that the provision is therefore 
not ambiguous, I respectfully dissent.
 
__________________________________________
David M. 
Medina
Justice
 
 
Opinion 
delivered:         August 31, 2006
 
 
 






[1]  The specific policy at issue in this matter is 
the Homeowners Form B (HO-B) insurance policy as prescribed by the Texas 
Department of Insurance effective July 8, 1992, and revised January 1, 1996. 
Throughout this opinion, all references to “the policy” are references to the 
HO-B policy.

[2]  The Feisses also argued that coverage should be 
extended to all mold contamination in their home caused by plumbing and HVAC 
leaks under another provision of the policy pertaining to the accidental 
discharge of water or steam from such systems. However, the Fifth Circuit 
concluded that the Feisses had waived the issue by failing to include it as a 
proper part of their appeal. 392 F.3d at 806.

[3]  Lambros based its holding on two earlier cases 
which explained the meaning of “ensuing loss.” McKool v. Reliance Ins. 
Co., 386 S.W.2d 344, 345-346 (Tex. Civ. App.BDallas 1965, writ dism’d) (“Giving to the words used 
[ensuing from] their ordinary meaning, we think it clearly appears therefrom 
that, although losses caused by extremes of temperature or cracking are not 
covered by the policy, all ensuing losses (meaning losses which follow or come 
afterwards as a consequence) caused by water damage are covered. In other words, 
the tile having cracked because of the extreme cold or ice, there could be no recovery therefor, but if 
water had entered through the cracks thus caused, the ensuing damage caused by 
the entry of the water would be recoverable.”); Park v. Hanover Insurance 
Co., 443 S.W.2d 940, 942 (Tex. Civ. App.-Amarillo 1969, no writ) (finding no 
coverage because exclusion at issue did not contain an ensuing-loss provision, 
but stating that ensuing loss is covered if it results from water damage caused 
by an excluded cause). 

[4]  At the time of these revisions, State Farm 
apparently acknowledged that a covered water damage claim included mold: “State 
Farm agrees to extend the coverage for water damage in the same manner as 
provided in the HO-B. . . . Specifically, State Farm extends coverage for 
reasonable and necessary repair or replacement of property physically damaged by 
a covered water loss which damage shall include mold.” Tex. Dep’t of Ins., 
Official Order No. 02-0208, at 10-11; see also Tex. Dep’t of Ins., 
Comm’rs Order No. 01-1105 (Adoption Order dated November 28, 2001; Docket 
No. 26, p. 191-189.