**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 15, 2011

Lyle W. Cayce
Clerk

No. 10-10943
Summary Calendar

MARY ELLEN ROOTERS,

Plaintiff - Appellant

v.

STATE FARM LLOYDS, A Lloyds Company in Dallas, Texas,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-225

Before JOLLY, GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Fred T. Rooters (hereinafter Reverend Rooters) founded and established the General Christian Society of Dallas, Inc. (hereinafter GCS). Reverend Rooters and GCS owned property, where Reverend Rooters and his wife, Mary Ellen Rooters (hereinafter Mrs. Rooters or Rooters), lived. Reverend Rooters and GCS took out a Homeowners Form B (HO-B) insurance policy with State Farm Lloyds (State Farm), which covered certain damages caused by hail. In 1999,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10943

Reverend Rooters filed a claim for hail damage with State Farm. State Farm paid on the claim. In 2001, Reverend Rooters died, and Mrs. Rooters filed a second claim, alleging that the interior of the residence developed high concentrations of black mold related to the 1999 hail claim and that State Farm had not paid sufficient funds to repair the residence's interior. After paying approximately $93,000, State Farm did not make further payment. Mrs. Rooters subsequently filed suit, alleging breach of contract and numerous extra-contractual claims. The district court granted summary judgment in favor of State Farm. We AFFIRM.

## I.

Reverend Rooters founded GCS in 1988. Soon after, Reverend Rooters and GCS purchased property located in Duncanville, Texas. Reverend and Mrs. Rooters resided in the property together from 1988 until 2001. In 1998, State Farm issued Reverend Rooters and GCS an HO-B insurance policy (hereinafter the policy), which insured the residence from December 18, 1998 to December 18, 1999 and identified Reverend Rooters, GCS, and the mortgagee Washington Mutual Bank as the insureds. The policy contained the following relevant coverage and exclusion provisions:

**SECTION I – PROPERTY COVERAGE:**

### Coverage A (Dwelling)

We cover:

1.    the dwelling on the residence premises shown on the declarations page, including structures attached to the dwelling

### Coverage B (Personal Property)

We cover:

1.    a.    personal property owned, worn or used by an insured while on the residence premises. This includes window or wall air conditioning units.

No. 10-10943

**Extension of Coverage**

> 2.    LOSS OF USE. If a loss caused by a Peril Insured against under Section I makes the residence premises wholly or partially untenantable, we cover:
>
> > a.    additional living expenses, meaning any necessary and reasonable increase in living expense you incur so that your household can maintain its normal standard of living.

**SECTION I – EXCLUSIONS:**

1. The following exclusions apply to loss to property described under Coverage A (Dwelling) or Coverage B (Personal Property), but they do not apply to an ensuing loss caused by fire, smoke or explosion:

. . . .

c.    We do not cover loss caused by windstorm, hurricane or hail to:

. . .

> (3) personal property contained in a building unless direct force of wind or hail makes an opening in a roof or wall and rain, snow, sand or dust enters through this opening and causes the damage.

. . .

f.    We do not cover loss caused by:

. . .

> (2) rust, rot, mold or other fungi.

In 1999, hail and rain caused water damage to the roof and interior of the residence. Reverend Rooters filed a claim on or about May 4, 1999 with State Farm pursuant to subsection 1(c)(3) of the "Exclusion" provision, claiming that hail caused damage to the roof, water entered through the opening, and caused damage to the residence. In response, State Farm opened a claim (hereinafter the 1999 hail claim). State Farm paid Reverend Rooters approximately $19,000 for replacement of the roof, and repairs on the roof were completed. State Farm also issued Reverend Rooters another check for $331.00 of the $1,497.05 needed to repair the interior of the building.

3

No. 10-10943

Reverend Rooters passed away on June 28, 2001. In 2002, Mrs. Rooters (hereinafter Rooters) contacted State Farm and requested that the company conduct an investigation because, she alleged, the interior of the residence developed high concentrations of Stachybotrys, commonly known as black mold, and that State Farm still had not paid sufficient funds to repair the building's interior. Accordingly, State Farm sent an adjuster to the premises, after which the 1999 hail claim was re-opened. State Farm then issued Rooters a check for $4,402.42 for mold abatement, but she did not cash the check because she alleges that no directions were given by State Farm about how to use the money.

In 2003, Rooters paid for an environmental assessment of the interior of the building, which revealed high concentrations of black mold as well as other types of mold. She installed a new air conditioner on the day of the environmental assessment and awoke the next morning with her throat "closed up," her ears hurting, and her eyes burning. She moved out in June 2003. Rooters claims that she was then forced to hire an attorney to obtain funds needed to initiate further repairs to the interior of the building. From 2004 through 2006, Rooters and her counsel corresponded with State Farm numerous times. State Farm issued multiple checks. However, Rooters had difficulty cashing the checks because they were paid to the order of two of the original beneficiaries of the insurance policy, Reverend Rooters and GCS. After several years, the issue was resolved, but Rooters paid a portion of the funds received from State Farm to pay her counsel.

In sum, regarding the 1999 hail claim (including Rooters's 2002 mold complaint), State Farm made payments as follows: (1) $52,049.85 pursuant to Coverage A of the policy for the dwelling; (2) $35,052.72 pursuant to Coverage B of the policy for personal property; and (3) $6,051.70 pursuant to the policy's "Loss of Use" provision for additional living expenses. Thus, Rooters was paid a total of $93,154.27. Rooters does not dispute that these payments were issued.

No. 10-10943

On December 31, 2008, proceeding *pro se*, Rooters filed suit against State Farm in state court. State Farm removed the case to federal court and subsequently filed a motion for summary judgment. The district court summarily adopted the magistrate judge's report and recommendation, granting summary judgment in State Farm's favor. Rooters appealed.

## II.

## A.

We review a district court's grant of summary judgment *de novo*. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In reviewing summary judgment, "[w]e construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation and internal quotation marks omitted). The parties may satisfy their respective burdens by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1).

Furthermore, Texas law governs this diversity action and informs the interpretation of the insurance policy. *See RV Dev. L.P. v. Mid–Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011). We review the district court's application of state law *de novo* and, accordingly, look to Texas law to determine whether there are any grounds by which State Farm is liable to Rooters. *See Holt*, 627 F.3d at 191.

Additionally, Federal Rule of Appellate Procedure 28(a)(9) requires that a party's brief contain an argument, with "contentions and the reason for them with citations to the authorities and parts of the record on which the appellant

No. 10-10943

relies" and "for each issue, a concise statement of the applicable standard of review." We have explained that, when applying Rule 28's principles, we liberally construe a *pro se* litigant's brief and generally apply a less stringent standard to parties proceeding *pro se* than to parties represented by counsel. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Against this framework, we construe Rooters's *pro se* brief to this court and filings to the district court to allege breach of contract, negligence, common law bad faith, and violations of Texas Insurance Code article 21.21–2[1] and sections 541.003[2] and 542.003.[3][4] She

---

[1] Article 21.21–2 states in relevant part: "

> (a) No insurer doing business in this state under the authority, rules and regulations of this code shall engage in unfair claim settlement practices.
>
> (b) Any of the following acts by an insurer shall be constitute unfair settlement practices:
>
> > (1) Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue . . .

Article 21.21–2 was repealed effective 2005. *See* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.12, 1991 Tex. Gen. Laws 939, 1060, *repealed by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Sess. Law Serv. 3611, 4138.

[2] Section 541.003 states: "A person may not engage in this state in a trade practice that is defined in this chapter as or determined under this chapter to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

[3] Section 542.003 states, in relevant part: "An insurer engaging in business in this state may not engage in an unfair claim settlement practice."

[4] For the first time on appeal, Rooters argues that State Farm's handling of her claim violated her constitutional right to Fourteenth Amendment Due Process. U.S. Const. amend. XIV, § 1 ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."). However, "arguments not raised in the district court cannot be asserted for the first time on appeal." *Charter Sch. of Pine Grove, Inc. v. St. Helena Parish Sch. Bd.*, 417 F.3d 444, 447 (5th Cir. 2005). Thus, this argument was waived. Moreover, even if the argument were not waived, the Fourteenth Amendment only protects liberty and property interests against an invasion by a state actor, not a private party, such as State Farm. *See Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004).

No. 10-10943

requests compensatory and punitive damages.[5]

## B.

Our analysis of Rooters's claims is three-fold.  First, we must determine whether the policy covers Rooters's claim with State Farm from mold contamination in light of *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006) (*Fiess II*).  Next, if Rooters's claim with State Farm is of the type precluded by *Fiess II*, we determine whether any of her claims are barred as a matter of law.  Finally, we examine whether Rooters is entitled to punitive damages.

## 1.

Rooters claims that neither she nor her husband have ever made a claim with State Farm strictly for mold damage.  She maintains that her claim is for water damage.  Specifically, she claims that the 1999 hail damage allowed water to leak through the roof and into the residence, which caused the black mold to appear.  She argues that, because the mold was allegedly instigated by the water damage and water damage is covered by the policy, the mold contamination is also covered by the policy.  The plaintiffs made similar arguments in *Fiess*.[6]

---

[5] The district court liberally interpreted Rooters's second amended complaint (her live pleading) to allege that she is entitled to damages for mental anguish.  However, after reviewing the record, we conclude that Rooters did not request damages for mental anguish in her complaint.  Specifically, the closest she comes to requesting "mental anguish" damages relates to her negligence and bad faith claims.  She claims that State Farm's conduct caused she and "her family to sustain a loss of quality of life, suffer emotional stress, and to experience undue economic hardship."  Moreover, in the "Damages" and "Prayer" sections of her complaint, Rooters requests only compensatory and punitive damages, as well as pre-judgment and post-judgment interest for cost of suit.  Furthermore, in the portion of her brief to this court listing her claims, Rooters only summarily states that there is evidence of mental anguish damages.  In sum, we do not construe Rooters's complaint to request damages for mental anguish.  Were we to decide the merits of Rooters's mental anguish claim, we note that Rooters has not provided evidence of "the nature, duration, and severity of [her alleged] mental anguish, [that] establish[es] a substantial disruption in[her] daily routine." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797 (Tex. 2006) (citation and internal quotation marks omitted).

[6] For purposes of clarity, references to the *Fiess* line of cases will collectively be referred to as *Fiess*.

No. 10-10943

In *Fiess v. State Farm Lloyds*, following a tropical storm, the plaintiffs filed suit against State Farm, seeking coverage for mold contamination in their house. 392 F.3d 802, 804 (5th Cir. 2004) (*Fiess I*). They alleged that the mold was caused by water damage from "pre-flood roof leaks, plumbing leaks, heating, air conditioning and ventilation (HVAC) leaks, exterior door leaks, and window leaks." *Id.* The district court granted State Farm's motion for summary judgment. *Id.* at 805. The plaintiffs appealed. Relevant here, on appeal they argued "that the district court erred in granting summary judgment because the ensuring loss provision provides coverage for mold contamination caused by otherwise covered water damage." *Id.* at 805–06. Because there was no case law on point, this court certified to the Texas Supreme Court the question, does the ensuing loss provision contained in the exclusions provision of the plaintiffs' HO-B insurance policy with State Farm, when read in conjunction with the remainder of the policy, provide coverage for mold contamination caused by water damage that is otherwise covered under the policy? *Id.* at 811–12. The policy at issue in *Fiess* was identical to the policy at issue in the present case.

Following certification, the Texas Supreme Court concluded that the policy did not cover mold damage. *Fiess II*, 202 S.W.3d at 748–52. Specifically, the court held that, because mold-related losses were explicitly barred by the mold exclusion, the "ensuing loss" for water damage clause could not create coverage for mold stemming from roof and window leaks even though the mold damage arose in part because of water damage. *Id.* at 748–52. Following the Texas Supreme Court's decision, this court affirmed the district court's summary judgment in State Farm's favor. *Fiess v. State Farm Lloyds*, 472 F.3d 383, 384 (5th Cir. 2006) (*Fiess III*).

The district court properly held that Rooters's mold contamination claim is not covered by the policy. The Texas Supreme has acknowledged that its "decision in *Fiess* [*II*] was unquestionably broad," and clearly held that State

8

No. 10-10943

Farm's HO-B insurance policy does not cover mold damage. *State Farm Lloyds v. Page,* 315 S.W.3d 525, 529 (Tex. 2010). The only recognized exception to this broad pronouncement is "when a plumbing leak results in mold contamination." *Id.* In these situations, " the policy [only] covers mold damage to personal property but not to the dwelling." *Id.*

Here, Rooters argues that the mold contamination was allegedly caused by water damage, a covered claim; thus, the mold contamination is also a covered claim. However, as discussed above, the Texas Supreme Court rejected the same argument in *Fiess II.* And because Rooters does not allege that the mold contamination was caused by a plumbing leak, the Texas Supreme Court's decision in *Page* does not bring Rooters's mold contamination claim into the policy's coverage.[7] In sum, Rooters's mold contamination claim has never been covered by the policy. Accordingly, we next examine whether any of Rooters's claims should be dismissed as a matter of law.

**2.**

All of Rooters's claims must be dismissed as a matter of law. However, only Rooters's breach of contract, common law bad faith, and section 541 and 542.003 claims are precluded because of *Fiess II.* The remaining claims—

---

[7] We recognize that *Fiess II* was decided after the policy at issue in this case was issued. However, "The general principle that statutes operate prospectively and judicial decisions apply retroactively ha[s] been followed by the common law and the Supreme Court's decisions 'for near a thousand years.'" *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 329 (5th Cir. 1999)(quoting *Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372 (1910); *see also Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 515 (Tex. 1992) ("Generally, judicial decisions apply retroactively."). And Rooters does not argue that an exception applies to this rule. *See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999) ("When law changes in unanticipated ways during an appeal . . . this court will generally remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard. The motivation of this rule is fairness: to prevent injustice to a party who had no reason to expect a changed rule at the time of trial.").

No. 10-10943

negligence and article 21.21–2— are not recognized claims under Texas law. We begin with the claims subject to dismissal pursuant to *Fiess II*.

First, to establish a breach of contract claim under Texas law, a party must at least establish that a valid contract exists between the plaintiff and defendant and that the defendant breached the terms of the contract. *See Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.). As explained above, mold contamination is not covered by the insurance contract. Therefore, Rooters cannot recover for breach of contract based on damages caused by mold.

Rooters also claims that State Farm is liable for common law bad faith. However, the Texas Supreme Court has explained: "As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.*, 297 S.W.3d 248, 253–54 (Tex. 2009) (citation and internal quotation marks omitted). Thus, Rooters's common law bad faith claim fails as a matter of law. Furthermore, although claims under the Texas Insurance Code "are individual causes of action which do not depend on each other for support, Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (citation, internal quotation marks, and brackets omitted). Therefore, Rooters's allegation that State Farm violated section 541 and 542.003 of the Texas Insurance Code, which are essentially bad faith claims, must also fail as a matter of law.

Finally, Rooters's negligence and article 21.21–2 claims are not recognized claims under Texas law. Specifically, Rooters claims that, because State Farm failed to honor the policy provisions of the insurance contract, the company's "acts and omissions" constitute negligence, which caused her and "her family to sustain a loss in quality of life, suffer emotional stress, and to experience undue

economic hardship." Rooters effectively claims that State Farm negligently handled her claim. However,"Texas law does not recognize a cause of action for negligent claims handling." *Higginbotham*,103 F.3d at 460. We have explained that the only duties imposed on an insured, under Texas law, are (1) the duties to act in good faith and deal fairly with the insured and (2) the duties imposed by the parties' contract. *Id.* We further explained that, "[i]n order for a tort duty to arise out of a contractual duty, i.e. negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties." *Id.* (citation and internal quotation marks omitted). Here, Rooters's claim stems directly from what she believed were mold damages covered by the policy and State Farm's alleged improper denial of her claim; thus, her allegations are solely contractual in nature. Accordingly, the district court did not err in dismissing Rooters's negligence claim.

The district court properly dismissed Rooters's article 21.21–2 claim. Article 21.21–2 defines and prohibits unfair claim settlement practices. TEX. INS. CODE art. 21.21–2. In *Allstate Insurance Co. v. Watson*, the Texas Supreme Court explained that "art[icle] 21.21–2 does not create a private cause of action for violations of that statute." 876 S.W.2d 145, 148 (Tex. 1994). The court noted that a provision that would create a private cause of action for unfair claim settlement practices was rejected by the Texas legislature on multiple occasions. *Id.* at 149. Therefore, Rooters's article 21.21–2 claim is not valid as a matter of law.

**3.**

Rooters claims that she is entitled to punitive damages. Under Texas law, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE § 41.003(a)(1)–(3). Although this

No. 10-10943

court liberally construes a *pro se* litigant's brief, "*pro se* parties [still must] brief the issues and reasonably comply with the standards of Rule 28." *Grant*, 59 F.3d at 524 n.2. We have carefully reviewed the record and, aside from vague and conclusory assertions, Rooters has presented no evidence to support a claim for punitive damages, which are only available in exceptional cases. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994) ("Every tort involves conduct that the law considers wrong, but punitive damages are proper only in the most exceptional cases. Unless bad faith is accompanied by aggravated conduct by the insurer, then compensatory damages alone are the proper remedy.").

## III.

Accordingly, we AFFIRM the district court's summary judgment.