**Affirmed and Memorandum Opinion filed August 12, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00024-CV

---

## MOHAMMED KHAN, Appellant

### V.

## SAFECO SURPLUS LINES, CRAWFORD & COMPANY, AND GARY WHIGHTSIL, Appellees

---

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 04-DCV-135176**

---

## M E M O R A N D U M   O P I N I O N

In this insurance dispute, appellant Mohammed Khan[1] challenges a jury verdict in favor of appellees Safeco Surplus Lines, Crawford & Company, and Gary Whightsil.  Khan raises many issues on appeal, which we consolidate by subject matter.  After careful review, we affirm the trial court's judgment.

---

[1] In both the clerk's and reporter's record, the name "Khan" is spelled both "Khan" and "Kahn."  For consistency's sake, we spell it as it is appears on the notice of appeal and judgment: Khan.

## INTRODUCTION

Khan was represented by counsel below. However, he is acting pro se on appeal. The record of this multi-day trial contains nineteen volumes, including numerous volumes of multi-page exhibits. Khan, even though acting pro se on appeal, is held to the same standard as a licensed attorney and must comply with all applicable rules of procedure. *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston [14th Dist.] 2008, no pet.). We will not make allowances or apply different standards because a case is presented by a pro se litigant. *Id.* Pro se litigants must properly present their cases on appeal because otherwise they would have an unfair advantage over those parties who are represented by counsel. *See id.*

Khan's brief is not well organized, which often makes it difficult to discern the nature of his arguments. Further, numerous factual assertions are not supported by record references. *See* Tex. R. App. P. 38.1(g) ("The brief must state concisely and without argument the facts pertinent to the issues or points presented. . . . The statement must be supported by record references."). His summary of the argument begins on page 33 of his brief and appears to be a simple repetition of his issues presented for review. *See* Tex. R. App. P. 38.1(h) ("This summary must not merely repeat the issues or points presented for review."). Many of his arguments are not supported with citations to authorities. *See* Tex. R. App. P. 38.1(i) (stating that the brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). With these deficits hindering our review of this case, we nonetheless begin with a brief background of the facts.

## BACKGROUND

In May 2001, Tasneem Khan, Khan's wife, took out a home equity loan on the home she and her family lived in located in Sugar Land, Texas (the Property). Both the loan and the home were in her name only. In July 2002, the home owners insurance on the Property lapsed. The lender, Option One Mortgage Corporation, sent Tasneem a letter informing her that, in accordance with the terms of the Deed of Trust, it was purchasing a force-placed insurance policy issued by Safeco on the Property. The policy provided $250,000 in structural coverage and $25,000 in content coverage for the borrower. The named insured under the policy was Option One. The policy was effective from July 21, 2002 to July 21, 2003.

In late August 2002, the Khans returned home from a multiple-week family vacation and discovered "[w]ater . . . everywhere in the house" as if there was "no roof on the home." On August 26, 2002, Khan reported the matter to Safeco. According to Khan, the water in the Property came from a single air conditioning pan leak in the attic.

Safeco assigned the claim to Crawford for adjustment and investigation. Crawford opened a file and appointed an adjustor to handle it. By September 13, Safeco had opened ten claims on the Property. The adjustor contacted a plumbing company to investigate possible leaks and engineer Gary Whightsil to investigate the loss. Whightsil had extensive investigative experience; he had investigated nearly 250 water- and mold-damaged houses prior to examining the Property. Whightsil inspected the Property on September 19. His investigation revealed numerous sources of water intrusion beyond the air conditioning pan leak.

Whightsil also discovered the presence of mold in several locations in the Property and performed testing to determine the type and level of contamination. A microbiologist, Abdolreza Marvdashti, reviewed Whightsil's report and the

3

results of the mold testing and made changes to the report. Whightsil's report indicated that the mold contamination was such that evacuation of the Property was recommended. Whightsil developed a protocol detailing areas of the Property to be remediated based on his investigation and report. After several requests for the report, Khan was given a copy of it in late October. The Khans moved out of the house in early November 2002.

At some point during Crawford's investigation of these multiple claims, Khan became upset with the handling of the claims. He began collecting information on mold remediation and reconstruction. Based on the Whightsil protocol report, Crawford obtained an estimate from Belfor Construction to perform the remediation. Belfor provided an estimate of approximately $80,000 to remediate and build-back the Property. Khan informed Crawford that he had obtained estimates for remediation from other contractors that were much higher, but he refused to provide them to Crawford.[2] Crawford made the decision to pay the claims to Option One and close them out in December 2002.

During the investigation of the claim, Khan was uncooperative when Crawford's personnel came to the Property, delaying meetings with them, refusing to answer the door, and refusing to allow their experts entry into the Property during the pendency of the suit. Belfor was prepared to perform the work detailed in the remediation protocol report, and Safeco, through Option One, provided Tasneem with over $70,000 to pay the Belfor construction estimate (less the

---

[2] Khan apparently provided them at some time during the pendency of the suit, perhaps years later, but there is nothing to indicate he provided Crawford or Safeco with copies of these estimates before Safeco paid the claims and closed the file in December 2002. In fact, as discussed below, Khan recorded a conversation with Crawford representative Patrick Fahey in which he stated he was not going to send his estimates to Crawford. Further, as part of this conversation, the dollar amount of the estimates he stated he had for remediation do not in any way match the amounts on the estimates that Khan eventually supplied to Safeco personnel.

4

deductibles). Safeco also paid directly to Tasneem $26,000 for damage to the Khans' personal property—an amount $1,000 over the policy coverage limit for content coverage. The Khans did not use the money provided them to remediate the Property, claiming that it was inadequate to clear the home of the mold.[3] They made no repairs to the home whatsoever with any of the money they received.

In April 2003, the Khans hired counsel and provided formal written notification to Safeco that it had violated the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act (the DTPA) in handling the Khans' mold claims. In this letter, the Khans alleged that their son, who suffered from muscular dystrophy, "suffered horribly due to the delay and misrepresentations of the claim," and had since passed away. The Khans demanded the policy limits for their policy coverage for their claims because the costs of rebuilding the Property exceeded the policy limits. They also sought actual damages of $750,000 for violations of the DTPA and attorney's fees. Safeco refused their settlement demand, listing the following reasons, among others:

- Crawford and Company obtained a repair estimate from Belfor Construction for the dwelling and from Coastal Cleaning Services, Inc. for the personal property based on the scope of repair determined by the experts. Please note there was some delay in obtaining these estimates as Mr. Kahn failed to keep scheduled appointments or refused us entry onto the premises on several occasions.

- Payment for the dwelling loss was remitted to Option One Mortgage, the Named Insured, in December 2002. The settlement amount was based on the estimate of repair from Belfor Construction. The damage did not exceed limits. To date, Option

---

[3] During his pre-trial depositions and at trial, Khan stated that the Khans used some of the money to clean their personal property and some of the money for living expenses, and testified inconsistently about what happened with the remainder of the money.

One Mortgage has not expressed any concerns in regard to this settlement amount.

- Payments for the personal property loss were remitted to the Kahn's [sic], as "borrower's" [sic], in October and December 2002. The final settlement amount was based on the agreement that was reached with Mr. Kahn for the repair and replacement of the damaged property in December 2002. The damage did not exceed the policy limits. . . .

- You state that we have done nothing to rectify the problems. Since payment was remitted in December 2002, we question why repairs have not been undertaken.

- You state that the Kahn's son suffered horribly due to our alleged delay and misrepresentations of this claim. Based on our conversations with Mr. Kahn, we understand that their son died before the loss was reported to us. Given this, we question how any alleged delay and misrepresentations caused the Kahn's son to suffer horribly.

We are now nine months post loss and no repairs have been undertaken.

***

To the extent Option One Mortgage and/or the Kahn's [sic] did not protect the property from further damage or make reasonable repairs required to protect the property, coverage does not apply.

Based on the above, we believe we have resolved this matter pursuant to the terms and conditions of Option One Mortgage's contract of insurance. Therefore, we reject your settlement demand. However, if there are damages which you do not believe have been considered (e.g. damages that were not included in the scope of repair that are related to this loss), please forward this information to me for my review.

On August 26, 2003, the Khans filed suit against Safeco and Crawford for violations of the DTPA and the Texas Insurance Code, common law fraud, and breach of contract in Harris County. The Khans sought actual and economic damages, as well as damages for mental anguish, multiple damages under the

DTPA, exemplary damages, and attorney's fees. This suit was transferred to Dallas County and later non-suited by the Khans. The Khans filed suit in Fort Bend County and later amended their petition to add Tasneem's lender, Option One; microbiologist Marvdashti, who had approved Whightsil's mold and leak report and remediation protocol; and Whightsil, as well as adding several other claims, including civil conspiracy, negligence and gross negligence, and intentional infliction of emotional distress.

Before being dismissed from the suit, Marvdashti signed an affidavit in which he stated he had not seen the underlying data when he signed off on Whightsil's report. He further stated that he disagreed in several respects with this report. He and Option One were non-suited by the Khans. This case lingered in the trial court for years, with various motions for summary judgment filed by defendants Safeco and Crawford and attempts at mediation and settlement failing. Ultimately, Crawford and Whightsil successfully moved for summary judgment on all claims against them except for those under the Texas Insurance Code.

As the case was pending, the Property continued to deteriorate. The home was damaged by a tornado in October 2003; the Khans received insurance proceeds for roof repair and mold remediation. Although they repaired the roof, they did not use the money to make any repairs on the interior of the house or remediate any mold from this loss. Two hurricanes hit the area during the pendency of the suit. No one was living in the home, and it continued to be vacant throughout trial. The case was called for a jury trial on the Khans' tenth amended petition in August 2012 against Safeco, Crawford, and Whightsil.

At trial, the jury heard evidence concerning the defendants' handling of the August 26, 2002 claims, including reviewing the above-described settlement demand submitted by the Khans and Safeco's letter denying it. Khan was the only

person from his family to testify concerning the damage to the Property. Pertinently, Marvdashti testified via video-taped deposition that his disagreements with Whightsil's report were "mere difference[s] of opinion" and were not evidence of deception. Marvdashti stated that the manner in which Whightsil conducted his testing fell within the norm of the industry. He further stated, "Based on what I read from Mr. Whightsil's investigation and interview, his conclusions and his analysis, I think I established the fact that there were multiple occurrences of water damage that dated back several years prior - - prior to his investigation, the date of his investigation." Marvdashti stated that there would have been a need for mold remediation even if the air conditioning pan leak that occurred on August 26, 2002, had not occurred—i.e., there was already mold present in the house when the leak occurred.

The Khans' microbiology expert, Paula Vance, opined that the summary report prepared by Whightsil regarding the levels of mold found in the Property was inconsistent with the lab results upon which it was based. She also testified that "back in 2001[,] there were engineers and industrial hygienists that wrote these kinds of remediation reports, but usually with the help or interpretation of a microbiologist." She further stated that she did not believe the protocol contained in Whightsil's report would have been "adequate to remediate the house." Working with a remediation specialist, Vance developed her own remediation protocol. She acknowledged that, when she saw the house in 2005, the visible amount of damage was "probably almost the same, but when you take samples you know that the destruction has gone further. Wherever the water damage was the organisms started to grow, and they continued to grow there because they weren't remediated." She further admitted that she based her own remediation protocol on the leaks identified by Whightsil in his report. She further acknowledged that she

8

had not seen the Property in 2002 and that she had not seen it after Khan had filed another claim for water damage in 2003.[4]

Two defense experts also testified regarding the adequacy of Whightsil's report, Warren French and Eric LeBrocq. Both agreed that Whightsil's report accurately described the location of the leaks in the Property. Warren stated that the damage in the Property had gotten significantly worse since 2002 and documented this deterioration for the jury by taking photographs in 2011 and comparing them to Whightsil's photographs from 2002. LeBrocq testified that, in his opinion, if Whightsil's remediation recommendations had been undertaken by the Khans in 2002, they would have been sufficient to address the mold issues in the house:

> [Whightsil] identified the areas of water intrusion, therefore, what - - what needed to be fixed to stop the water intrusion, rule number one. And then he identified what should be done to remove and replace mold-ridden materials. I was especially impressed with his detail in 2002. . . . [T]here were no Texas mold rules [then]. There were only the New York guidelines that we refer to, but he even stated correctly that furnishings and interior parts of the house, if they did not show water damage, and if they did not show mold growth, could in fact be cleaned and reused. Critically important is where he says they could be cleaned and reused. But the way it was written, he went on to say "but if it is," if it is cleaned - - if there is water stains and if there is mold, visible mold, get rid of it. If it's a porous material, sofa, chairs. And if the carpet is wet, get rid of it.

After both sides rested and closed, the trial court conducted the jury charge conference. The only question to which Khan objected was Question No. 4, a question relating to whether the Khans failed to protect the Property from further damages. Otherwise, Khan raised no objections to the jury charge. The jury found

---

[4] Khan hired a contractor to prepare an estimate for repair and remediation of the Property, which was completed in "late 2011." This estimate for remediation and build-back of the Property totaled $429,861.49.

9

in favor of Safeco, Crawford, and Whightsil on all issues submitted. The trial court entered a take-nothing judgment in favor of the defendants.

The Khans filed a motion for new trial, in which they raised several objections to the jury charge that were not raised before the charge was submitted to the jury. They also challenged the factual sufficiency of the evidence to support the jury's finding as to Question No. 6. The motion was overruled by operation of law. Khan appealed pro se; Tasneem's appeal was dismissed because she did not timely file her own notice of appeal.

## ANALYSIS[5]

### A.    Safeco's and Crawford's "Bad Faith" Litigation

Khan first asserts that Safeco and Crawford "repeatedly misled the Court that there is an absence of coverage for Khan's underlying insurance claim and mold is excluded in the Safeco . . . policy." He argues that, because Safeco paid his claims, their contentions in the trial court that mold is excluded under the

---

[5] In their appellees' briefs, Safeco and Crawford and Whightsil challenge Khan's standing. Khan asserts he is a third-party beneficiary to the force-placed insurance contract. We agree. Khan is identified as a "borrower" in the Deed of Trust through which Option One's right to purchase the force-placed insurance policy arose. Further, the policy itself refers to a "Borrower," which is defined as "the mortgagor or mortgagor of an 'insured location' indebted under a mortgage held or serviced by you. As used in this policy, 'borrower' to the 'insured location' on which the 'borrower' is the mortgagor.'" The policy also provides for certain rights and duties directly to the borrower. For example, the policy provides that in case of a loss, either Option One or the "'borrower' must give us or our agent notice of the loss as soon as practicable. You [Option One] or the 'borrower' must protect the property from further damage, make reasonable repairs required to protect the property, and keep accurate record of repair expenditures." Another section provides that Safeco "will adjust all [personal property] losses with the 'borrower'. We will pay the 'borrower' unless some other person is named by the 'borrower' to receive payment." We thus conclude that there is sufficient evidence that Khan is an intended third-party beneficiary under this insurance policy. *See Basic Capital Mgmt., Inc. v. Dynex Comm'l, Inc.*, 348 S.W.3d 894, 899–901 (Tex. 2011); *see also Alvarado v. Lexington Ins. Co.*, 389 S.W.3d 544, 562–564 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (reversing summary judgment in favor of insurer because it failed to conclusively establish that mortgagor was not third-party beneficiary under force-placed insurance policy).

policy is "an act of bad faith." We conclude that Khan waived this issue by failing to brief it properly.

Khan provides no legal support for his argument. As noted above, Khan also attempts to incorporate by reference the argument and authorities provided in his responses to Safeco's motions for summary judgment filed in the trial court. *But see* Tex. R. App. P. 9.7 ("Any party may join in or adopt by reference all or any part of a brief, petition, response, motion, or other document filed *in an appellate court by another party in the same case*." (emphasis added)). Our rules of appellate procedure require that the brief contain a clear and concise argument for the contentions made, with appropriate citations to authorities. Tex. R. App. P. 38.1(i). Khan makes several conclusory statements and cites two cases, cases relied upon extensively by Appellees, urging that these cases do not apply. However, Khan advances no applicable authority or analysis in support of his issue.

Conclusory statements unsupported by legal authority do not meet the requirements of our briefing rules. *See Collins v. Walker*, 341 S.W.3d 570, 575 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing Tex. R. App. P. 38 and *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.)). Even if we construe Khan's appellate brief liberally, we cannot conclude that he has briefed this issue adequately. *See* Tex. R. App. P. 38.1(i); *see also Karaali v. Petroleum Wholesale, L.P.*, No. 14-11-00577-CV, 2013 WL 6198349, at *6 (Tex. App.—Houston [14th Dist.] Nov. 26, 2013, no pet.) (mem. op.) (citing *San Saba Energy L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

Further, to the extent that the gravamen of Khan's complaint is that the Appellees acted in bad faith because they were bound to afford coverage after

making some claim payments, we reject this complaint. That Safeco paid the Khans' claims when they were filed does not indicate, *ipso facto*, Safeco is acting in bad faith by denying coverage when the Khans filed suit seeking more money for those claims. This is especially true in light of *Fiess* and *Page*, in which the Texas Supreme Court determined that mold damage to a dwelling is not covered under certain Texas homeowner's policies that contain very similar mold exclusions as found in the force-placed policy in the Khans' case. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 530–31 (Tex. 2010); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006). As previously mentioned, Khan rejects these cases as inapplicable because they are not "retroactive." But "[i]t is well-established under Texas law that insurance coverage may not be created by estoppel where none exists under the plain terms of the policy." *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1263 n.3 (5th Cir. 1997) (citing *Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 602, 602–03 (Tex. 1988)). We need not address any retroactivity argument, however, because Khan has not raised a coverage issue; Khan raises a bad faith issue. Khan provides no authority to support any argument that a party acts in bad faith when it relies upon Texas Supreme Court authority for its legal position on coverage, particularly where well-established Texas law forecloses coverage by estoppel.

In sum, because of this inadequate briefing, Khan has waived this issue, and we overrule it. *See* Tex. R. App. P. 38.1(i); *Collins*, 341 S.W.3d at 575; *Canton–Carter*, 271 S.W.3d at 930–32.

## B.    Special Exceptions

In his next issue, Khan asserts that the trial court erred in overruling his pre-trial special exceptions to Safeco's coverage, concurrent cause, bona fide dispute, and no-extra-contractual-liability defenses. These special exceptions urged in the

12

trial court that Safeco's affirmative defenses misstate the facts and are not applicable. The special exceptions did not rely upon any authority. And, as with his first issue, Khan does not cite any authorities supporting these contentions on appeal. Accordingly, for the same reasons as stated above, we overrule his second issue.

## C. Jury Charge

Khan complains of a "fatally-flawed" jury charge in his third issue. He asserts that jury question number one, regarding coverage for the air conditioning pan leak, and its companion damages question were fatally flawed and "infected the entire jury charge" because the evidence conclusively established that the loss reported by Khan on August 26, 2002 was a covered loss in the case. He urges that these questions "impermissibly refer to an 'air conditioning drain pan leak,'" which takes "the fact-finding as to whether it was a covered peril out of the hands of the jury, the correct finder-of-fact in this case, and tell[s] the jury to find a specific fact that is NOT conclusively established by the evidence in the case." As noted above, however, Khan did not object to the jury charge on this basis.

Because these complaints were not raised in the trial court by a charge objection, it is not preserved. *See* Tex. R. Civ. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection."); *Kamat v. Prakash*, 420 S.W.3d 890, 910 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We therefore overrule this issue.

## E. Sufficiency Challenges

The rest of Khan's issues are sufficiency complaints. Regarding factual sufficiency of the evidence, raising such issues in a motion for new trial is a prerequisite for appellate review. *See* Tex. R. Civ. P. 324(b)(2), (3); *Daniels v.*

*Empty Eye, Inc.*, 368 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Thus, we do not address factual sufficiency issues that were not raised in Khan's motion for new trial. In a case tried to a jury, an argument that the evidence is legally insufficient to support a finding may be preserved for appeal in one of the following five ways: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact or issue; or (5) a motion for new trial. *Daniels*, 368 S.W.3d at 748–49. We do not address any of Khan's legal sufficiency issues that were not raised in one of these ways.

Khan challenges the sufficiency of the evidence to support the jury's findings to questions 3, 4, 5, 8, 10, 11, and 13. After careful review of the record, we find no indication that Khan raised these issues in any way before the trial court.[6] *See* Tex. R. Civ. P. 324(b)(2), (3); *Daniels*, 368 S.W.3d at 748–49. Thus, he has failed to preserve his sufficiency challenges to any of these jury findings. We overrule his fourth through ninth and eleventh issues.

## F.     Coverage for the Air-conditioning Pan Leak

In the Khans' motion for new trial, the following relevant factual sufficiency challenge was made:

> Answers that there is no coverage for the losses and that there are no damages are against the great weight and preponderance of the evidence because: (1) the case of *Fiess, et ux. v. State Farm Lloyds*,

---

[6] Important prudential considerations underlie error preservation rules. *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). Our error preservation rules promote such vital concerns as conserving judicial resources by permitting trial courts the opportunity to correct error before an appeal proceeds; encouraging fairness among litigants by preventing a party from unfairly surprising his opponent on appeal by stating his complaint for the first time; increasing accuracy in judicial decision-making by giving lower courts the chance to first consider and rule on error; and providing the parties the chance to develop and refine their arguments so that courts of appeal may focus on and analyze the key issues at issue. *See id.* (citations omitted).

392 F.3d 805 (5th Cir. 2006), certified question answered in 202 S.W.3d 744 (Tex. 2006) is not entitled to retroactive application and Defendant's witness testified that before *Fiess*, this loss was covered despite the reference to mold in an exclusion; and (2) exclusion (G) refers to "seepage or leakage" that is of necessity a slow event over time and the great weigh and preponderance of the evidence is that the peril was a sudden, catastrophic release of water over a relatively short period of time. The great weight and preponderance of the evidence also establishes that the sudden release of water caused damages which exceeded the amount paid, and the Plaintiffs introduced evidence that they had a specific equity share in those damages.

Thus, it appears that the factual sufficiency of the evidence to support the jury's finding to question 1 regarding Safeco's compliance with the policy for the air-conditioning pan leak, Khan's tenth appellate issue, was challenged in Khan's motion for new trial—albeit not for the same grounds as are raised in his appellate brief. Thus, we will address the factual sufficiency of the evidence to support this finding.

To evaluate the factual sufficiency of the evidence, we consider all the evidence and will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In this question, the jury was instructed that Safeco did not fail to comply with the terms of the policy if the Khans did not "protect the dwelling or property from further damage" or "make reasonable and necessary repairs to protect the dwelling or property."[7]   Also as noted above, the Khans did not object to the submission of

_____

[7] This question and the jury's answer are as follows:

Did Safeco fail to comply with the policy provision to pay for covered accidental direct physical loss to the dwelling caused by the air conditioning drain pan leak, which was reported on August 26, 2002?

15

this question to the jury.  We conclude that the record is rife with evidence that the Khans satisfied neither of these duties.

The Khans received approximately $70,000 in payment of the ten claims that were opened on the Property resulting from the initial claim that was filed on August 26, 2002.  As noted above, Khan testified inconsistently regarding what had happened to this money; however, he did not detail what amount, if any, had been spent on repairs to the home.  To the contrary, he stated that he had not used any of this money to make repairs to the Property.  Further, the jury heard evidence that Belfor Construction provided Khan with an estimate to clean up all the damage to the Property and that Belfor was ready to do the job for the amount of

---

You are instructed that the policy covers "accidental direct physical loss," which is not excluded.  You are instructed that covered "accidental direct physical loss" under the policy for the dwelling does <u>not</u> include:

Continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or from within a household appliance; or

Loss caused by:

(1)  Wear, tear, marring, deterioration;

(2)  Inherent vice, latent defect, mechanical breakdown;

(3)  Rust, mold, wet or dry rot; or

(4)  Settling cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.

However, any ensuing loss to the property not excluded in the policy is covered.

You are instructed that it is not a failure by Safeco to comply with the terms of the insurance policy if Mohammed and Tasneem Khan did not:

(1)  Protect the dwelling or property from further damage;

(2)  Make reasonable and necessary repairs to protect the dwelling or property; or

(3)  Give Safeco immediate notice of the facts relating to any loss.

Answer "Yes" or "No."

Answer:  _____No_____

16

its bid. Khan admitted that no one ever told him Belfor would not have remediated the Property for the amount of its bid. The jury could have inferred from this evidence that Belfor was ready, willing, and able to perform the work as bid.

Khan's experts testified that the amount of the Belfor bid was too low to properly remediate the Property. Khan asserts that the Belfor estimate was inadequate because it was based on the "sham" Whightsil protocol. He claims that Marvdashti, the microbiologist who signed off on Whightsil's protocol, later retracted his approval of the report. However, Marvdashti stated in his deposition testimony, played for the jury, that the manner in which Whightsil conducted his investigation and the techniques he used were within the "industry norm." Marvdashti further stated that, although he disagreed with many of Whightsil's conclusions about the mold levels in the Property, these disagreements were "mere difference[s] of opinion." Thus, Marvdashti's affidavit testimony does not undermine the Whightsil report, and does not render the evidence that Belfor was ready, willing, and able to perform the remediation work on the Property so against the overwhelming weight of the evidence that this implied finding is clearly wrong and unjust.

Additionally, defense expert Eric LeBrocq testified that, in his opinion, if Whightsil's remediation recommendations had been undertaken by the Khans in 2002, they would have been sufficient to address the mold issues in the house. Both LeBrocq and another expert, Warren French, agreed that Whightsil's report accurately described the location of the leaks in the Property. Although Khan provided testimony from his own experts regarding the levels of mold contamination and the cost to remediate the Property, these experts were looking at the Property in the condition it stood at the time of trial. Their opinions did not negate the contrary evidence of these defense experts, and Whightsil himself, that

17

the protocol developed by Whightsil was sufficient to remediate the Property at the time it was generated in 2002. Finally, the areas photographed by Whightsil were later photographed by defense experts. The jury was free to compare the state the Property was in in 2002 to the state the Property was in in 2011 and note the any deterioration in its condition.

Based on this evidence, the jury could have reasonably found that Khan failed to undertake any efforts to protect the property from further damage or make reasonable and necessary repairs to it. The more than adequate evidence that supports this finding is sufficient to uphold the jury's "no" answer based on the unobjected-to instructions given: that the Khans' failure to protect the Property from further damage or make reasonable and necessary repairs to protect it means that "it is not a failure by Safeco to comply with the terms of the insurance policy." In other words, the evidence supporting the jury's finding is not so weak or so against the overwhelming weight of the evidence that the jury's finding is clearly wrong and unjust. *Mar. Overseas Corp.*, 971 S.W.2d at 406–07; *Cain*, 709 S.W.2d at 176. For the foregoing reasons, we overrule Khan's tenth issue.

## CONCLUSION

After careful review of the record and the briefing in this appeal, we have overruled each of Khan's issues. The judgment of the trial court is affirmed.


/s/        Sharon McCally
                Justice

Panel consists of Justices McCally, Busby, and Donovan.